property to Mr. Avery for $105,000 in cash, the exact amount originally agreed upon.

The defendants lay stress upon the fact that the plaintiff, the broker, did not bring about the settlement of this litigation, but that it was done by Mr. Avery, the client. The plaintiff was not obliged to bring about an adjustment of any difficulties respecting conveyance of the property which the defendants had brought upon themselves by their own acts. If the plaintiff found a purchaser for the property at the defendant's price, as it is conceded the plaintiff did, and if that purchaser was so willing and able and eager to consummate the purchase as to help settle the litigation against the defendants, it was the good fortune of the defendants and of no concern to the plaintiff. Confessedly Mr. Lee had charge of the defendants' property, at least to a limited extent, because he looked after all the leases, drew all their contracts of sale, and advised them with respect to leasing and selling. That he did not have actual authority to make a contract with a broker, or power to bind the defendants by a contract of sale, is of no importance. The plaintiff brought the purchaser to him, who made an offer to purchase, which offer was communicated to the defendants and accepted by them. That they withdrew the acceptance afterwards neither exonerated them nor deprived the plaintiff of his compensation as broker; for they subsequently deeded to the plaintiff's client and received the exact price which they originally agreed to take. This subsequent deeding to plaintiff's client was not only a confession by the defendants that they had been wrong in refusing to do so in the beginning, but was likewise a confession that the plaintiff procured the purchaser of whom neither Mr. Lee nor the defendants had ever heard until the plaintiff brought him to Mr. Lee's office. The defendants well understood that if the property was sold a broker's commission must be paid. Indeed, in the letter to Mr. Lee prior to his sending the cablegram containing Avery's offer, the defendant Lee said that she would be content to receive $100,000 clear for the property after payment of broker's and other fees, but hoped it might be made $105,000 instead.

If a broker has any rights, and can ever maintain an action to recover commissions for the sale of real estate, this plaintiff proved facts entitling him to the judgment obtained, and it should be affirmed.

CLARKE, J., concurs.

---

POST et al. v. VAN SICLEN et al.

(Supreme Court, Appellate Division, First Department. June 11, 1909.)

REFERENCE (§ 18*)—REORGANIZATION OF CORPORATION—ACCOUNTING.

Notwithstanding Code Civ. Proc. § 1013, authorizing a compulsory reference where the trial involves a long account, in an action for an accounting and the termination of an agreement for the reorganization of a corporation, a reference to hear and determine the issues cannot be ordered until an interlocutory judgment providing for an accounting has

been ·entered after trial of the issues or on motion on the pleadings raising no issue.

|Ed. Note.—For other cases, see Reference, Cent. Dig. § 34; Dec. Dig. § 18.*]

Appeal from Special Term, New York County.

Action by H. A. V. Post and others against Abraham Van Siclen and others. From·an order referring the action to a referee to hear and determine, defendant Abraham Van Siclen appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

John W. Weed, for appellant.
Louis H. Freedman, for respondents.

HOUGHTON, J. The plaintiff and another, who was made defendant, were the reorganization committee of the Chattanooga Southern Railway Company, appointed by agreement. This action is brought for an accounting and to have the rights of the defendants fixed and the trust created by the reorganization agreement terminated. The appellant, Van Siclen, answered, admitting certain allegations of the complaint, denying information as to others, and setting up that certain moneys borrowed by the reorganization committee were not proper disbursements by them under the agreement and should be paid personally, and that certain acts were unauthorized.

The plaintiffs moved for a compulsory reference on the ground that the action involved the examination of a long account, and against the objection of the defendant Van Siclen the court appointed a referee to hear and determine. The order must be reversed. Section 1013 of the Code of Civil Procedure does not apply where the object of the action is to obtain an accounting. The rule is that in an action for an accounting a reference to hear and determine the issues cannot be ordered until an interlocutory judgment providing for such accounting has been entered after trial of the issues involved, or upon motion on the pleadings if no issue be raised. London v. Meryash (Sup.) 117 N. Y. Supp. 1, decided May term, 1909; Gibson v. Wildman, 106 App. Div. 388, 94 N. Y. Supp. 593.

The·order is reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

---

HESS v. HESS et al.

(Supreme Court, Appellate Division, First Department. June 11, 1909.)

EXECUTORS AND ADMINISTRATORS (§ 138*) — REAL ESTATE — POWER OF SALE — "CLAIMS AND DEMANDS."

Testator bequeathed all his property to executors, in trust to accumulate rents and profits until the remarriage or death of the widow, and not to dispose of the same until the happening of either of such events, "except as hereinafter provided." By the second clause he directed payment of all claims and demands on or against his estate, and then a division of rents and profits among his wife and children. By the sixth clause he conferred

*For other cases see. same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes